IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DEBORAH LUCILLE RANDALL,
on behalf of CHRISTOPHER WILEY,
survivor of TIMOTHY LLOYD WILEY,

        Plaintiff,          Civil No. 04-6192-HA

    v.          OPINION
                               AND ORDER
JO ANNE B. BARNHART,
Commissioner of Social Security
Administration,

        Defendant.

---

Kathryn Tassinari
Robert A. Baron
Cram, Harder, Wells & Baron, P.C.
474 Willamette, Suite 200
Eugene, Oregon 97401
    Attorneys for Plaintiff

Karin J. Immergut
United States Attorney
Craig J. Casey
Assistant United States Attorney
1000 S.W. Third Avenue
Portland, Oregon 97204

David J. Burdett
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, Washington 98104
    Attorneys for Defendant

HAGGERTY, Chief Judge:

Pursuant to § 205(g) of the Social Security Act (the Act), as amended, 42 U.S.C. §§ 405(g), 1383(c)(3), plaintiff seeks judicial review of the final administrative decision denying his applications for disability insurance benefits (DIB) under Title II and Supplemental Security Income (SSI) under Title XVI. He argues that the Administrative Law Judge (ALJ) erred in rejecting the opinion of the examining psychologist, Dr. Judith Eckstein, a licensed psychologist, and of Dr. L. Lee McCullough, the treating pain specialist. Plaintiff also argues that the ALJ erred in assessing his credibility, in failing to credit the lay witness testimony, and in failing to show that plaintiff retains the ability to perform "other work" in the national economy.

For the reasons provided below, the court concludes that the ALJ's decision is supported by substantial evidence and free from legal error. Accordingly, the decision of the ALJ and the Commissioner is affirmed.

//

**ADMINISTRATIVE HISTORY**

Plaintiff protectively filed for DIB and SSI on July 26, 2001, alleging disability beginning on May 15, 1997. AR 16, 17. Plaintiff's applications were denied initially and upon reconsideration. AR 16. A hearing before ALJ Jean Kingrey was scheduled for August 21, 2003. At the hearing, plaintiff amended his alleged onset date to January 1, 2000. *Id.* On October 28, 2003, the ALJ issued a decision finding plaintiff not disabled. AR 16-30. The Appeals Council denied plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. *See* 20 C.F.R. §§ 416.1481, 422.210. On June 18, 2004, plaintiff filed a Complaint for judicial review.

**FACTUAL AND PROCEDURAL BACKGROUND**

At the time of the hearing, plaintiff was forty-four years old. AR 539. He completed the tenth grade and received his GED. *Id.* His past relevant employment history includes work as an equipment operator, supervisor, and driver operator. AR 27. On December 13, 2004, he died of a stroke.[1]

In May 1997, plaintiff fell off of a conveyor belt and sustained a cervical and lumbar strain/sprain, thoracic contusion, and left knee contusion. AR 175-194. In October 1997, an MRI showed a right posterior disc protrusion. AR 211. In January 1998, Dr. Maruice Collada, M.D., performed a semihemilaminectomy and disectomy. AR 198-205, 230, 233. The following month, Dr. Howard W. Tsang, M.D., an occupational medicine specialist

---

[1] Deborah Lucille Randall, on behalf of Christopher Wiley, has been substituted for plaintiff in this action. However, for the purpose of this opinion, the court's references to plaintiff are to Tim Wiley.

advised plaintiff to begin physical therapy, with restrictions of not lifting more than five pounds, no repetitive bending or twisting, no static bending, and primarily sedentary work. AR 210.

In late 2000, while incarcerated at the Polk County Jail, plaintiff presented to the infirmary on several occasions with complaints of an irregular heartbeat three to four times per day, chest pain, dizziness, and constant low back pain. AR 506. On December 6, 2000, Dr. Douglas Rexin, M.D., diagnosed plaintiff with chronic back pain and depression and recommended that he limited his work to six hours per day. AR 505.

On October 16, 2001, plaintiff presented to the Mercy Medical Center Emergency Room in Roseburg, Oregon, with complaints of worsening chronic back pain. AR 272-75. Dr. Ronald L. Rennick, M.D., diagnosed plaintiff with exacerbation of chronic back pain with a history of degenerative disk disease. AR 276. Two days later, plaintiff was examined by Dr. Eckstein. AR 255. Dr. Eckstein determined that plaintiff fell within the average range of intellectual functioning and did "not appear to have any significant cognitive deficits that would impede him vocationally or interpersonally." AR 259. She noted that plaintiff "portrayed himself in a particularly negative manner that may reflect a 'cry for help' or an exaggerated negative self-evaluation," and cautioned that her personality assessment of him possibly reflected plaintiff's exaggeration of his symptomotology and psychological functioning. *Id.*

With that caveat, Dr. Eckstein proceeded to describe plaintiff as being in marked distress over many different areas of his life, as appearing severely depressed, and as

withdrawn. Dr. Eckstein noted that plaintiff did not exhibit any psychotic symptomotology. *Id.* Dr. Eckstein concluded that plaintiff appeared to have difficulty with his psychological functioning and diagnosed plaintiff with: post-traumatic stress disorder (provisional); dysthymia; amphetamine dependence, in remission; personality disorder NOS with anti-social and avoidant features; chronic back and knee pain; and extreme unresolved traumatic events. AR 260. Dr. Eckstein strongly recommended that plaintiff enter into supportive psychotherapy and be evaluated for psychotropic medications. *Id.*

On the Rating of Impairment Severity Report, Dr. Eckstein found that plaintiff was markedly limited in daily activities and social functioning and was moderately limited in concentration, persistence, or pace. AR 261. She found that he had experienced one or two episodes of decompensation and that "even a marginal increase in mental demands or change in the environment would be predicted to cause [plaintiff] to decompensate[.]" AR 262.

On November 4, 2001, plaintiff sought emergency treatment for worsening back symptoms. AR 270. He became angry when he was informed that he would not receive narcotic pain medication from the emergency room. AR 271.

On November 12, 2001, Dr. McCullough examined plaintiff. AR 357. Dr. McCullough assessed plaintiff with chronic back pain, arthritis, post traumatic stress disorder, nicotine dependency, and depression. AR 358. Dr. McCullough prescribed Prozac, Trasodone, Naprosyn, and Percoset. AR 358. Two weeks later, plaintiff presented to Dr. McCullough with incapacitating back pain. AR 355. Dr. McCullough assessed plaintiff with

possible hypertension and noted that plaintiff's "back pain does appear to have a possible neurosurgical basis . . . ." *Id.*

Plaintiff saw Dr. McCullough three more times from February 2002 to April 2002 for back pain and depression. AR 348-350. On April 19, 2002, he reported that his back pain had worsened. AR 346. Dr. McCullough referred plaintiff for a neurologic consultation for lumbar nerve root testing. *Id.* On May 21, 2002, Dr. McCullough diagnosed plaintiff with lumbar radiculitis, back pain, post-traumatic stress disorder, and depression. AR 343. He again referred plaintiff for a lumbar nerve root testing. *Id.* The lumbar nerve root testing results fell within normal range and were otherwise unremarkable. AR 361.

Plaintiff was examined again by Dr. Eckstein on July 23, 2002. AR 316. Plaintiff reported that his trials with Prozac and Wellbutrin were unsuccessful. AR 317. Dr. Eckstein noted that plaintiff was living in a more stable environment, but still remained socially isolated. She diagnosed plaintiff with dysthymia, post-traumatic stress disorder, personality disorder NOS with avoidant features, chronic lower back pain, and severe trauma. AR 318. She again found him to be markedly limited in daily activities and social functioning and moderately limited in concentration, persistence, and pace. AR 319. She concluded that he had not experienced an episode of decompensation since she had last seen him, but that he was still emotionally fragile and likely to become "acutely anxious" under stress. AR 320.

On September 13, 2002, plaintiff reported to Dr. McCullough that his back pain had worsened. AR 329. Dr. McCullough noted that plaintiff "is clearly currently totally

unemployable." *Id.* On November 2, 2002, Dr. McCullough referred plaintiff to Douglas County Mental Health (DCMH) for management of psychotropic medication. AR 381.

On January 16, 2003, a psychiatric mental health nurse at DCMH prescribed Paxil to plaintiff after plaintiff described his chronic back pain, feelings of helplessness, dysphoria, and depression. AR 370. A week later, plaintiff reported having confused the instructions for Paxil and had emptied out of the pills early. AR 367.

On May 21, 2003, Dr. McCullough wrote to plaintiff's attorney that he had reviewed Dr. Eckstein's psychological evaluation of plaintiff and that he concurred "substantially with her opinions . . . ." AR 453. He indicated that there were additional limitations imposed by plaintiff's medical illness, including "hypothalamic/pituitary pypogonadism as a consequence of the requirement for chronic opiate treatment of his chronic pain," which was aggravating his chronic back pain and lumbar radiculitis. *Id.* Dr. McCullough indicated that this, in addition to other "medical difficulties compound [plaintiff's] already marginal functional status and increase further the difficulties in addressing and stabilizing his mood disorders." *Id.*

On June 9, 2003, plaintiff reported to Dr. McCullough with worsening back pain with radiation into both legs. AR 469, 517. Dr. McCullough diagnosed plaintiff with lower back pain and mid-thoracic back pain. He indicated that plaintiff needed another MRI and suggested that plaintiff start testosterone injections to induce weight loss. *Id.* On October 21, 2003, Dr. McCullough wrote that he and plaintiff discussed future job re-entry possibilities. Plaintiff expressed interest in returning to the work force as a heavy equipment

operator. AR 60. Dr. McCullough stated that this was "very unlikely" because it was "far too stressful on a chronic back pain condition." *Id.*

On October 8, 2003, plaintiff requested that Dr. McCullough prescribe him Xanax, as he thought that would work better than Ativan. AR 61.

On December 3, 2003, after the ALJ's decision, plaintiff's attorney wrote a letter to Dr. McCullough, asking him the following questions: whether he had any past experience in the field of psychiatric medicine; whether his medical opinion would change after considering plaintiff's mental health records; whether Dr. McCullough had observed plaintiff's complaints of edema in his legs and whether that was a side effect of plaintiff's medicine; and whether Dr. McCullough believed that plaintiff was substituting his illicit drug addiction with narcotic pain medication. AR 530-32. Dr. McCullough responded that he did have experience in psychiatric medicine and had practiced full-time psychiatry at DCMH; that review of the mental health records did not change his medical opinion of plaintiff's condition; that he had observed edema and found it to be largely a product of the chronic opiate therapy for plaintiff's chronic pain and that it is a side effect; and that plaintiff had been overtly compliant with the pain management plan. AR 528.

**Plaintiff's Testimony**

Plaintiff testified that he has a history of drug abuse and a criminal record. AR 546-48. He testified that he was limited by chronic lower back pain that radiates into his legs. AR 553-55. He has swelling in his legs, ankles, and feet every day due to edema. AR 557.

He also suffers from depression and anxiety, has had suicide ideation, and regularly experiences difficulty concentrating.  AR 560-68.

**Lay Testimony**

Lisa Elian (Elian), plaintiff's girlfriend, testified that she and her daughter have lived with plaintiff for about one year.  AR 571.  She described plaintiff's daily activities as sitting or laying on the couch.  AR 573.  She testified that plaintiff's pain medication fatigues him and that he becomes frustrated and depressed because he cannot do anything around the house to help her.  AR 574.  Other than going to his medical appointments, which Elian's daughter drives him to, plaintiff rarely leaves the house.  AR 575.

**Medical Expert Testimony**

Dr. Susan L. Dragovich, a licensed psychologist, testified by telephone that the medical records supported a diagnosis of dysthymia, but that a more suitable diagnosis may be mood disorder associated with chronic back pain.  AR 581-82.  She testified that plaintiff's mental condition did not meet or equal any of the psychological listings, and she rated his mental restrictions as "mild at best."  AR 584.  She testified that he had moderate limitations in social functioning and mild limitations in concentration, persistence, or pace.  *Id.*  She saw no episodes of decompensation in the record.  AR 585.  Dr. Dragovich also testified that plaintiff should not work in service for the general public, or in close proximity with coworkers, and should be limited to simple, routine tasks.  AR 591.

//
//
//

**Vocational Expert Testimony**

The ALJ posed the following hypothetical question to the vocational expert (VE): A forty-four-year-old individual with a GED education who is limited to light work, with a sit or stand option; cannot bend frequently; should not work with the general public; and is limited to simple, routine tasks. AR 596-97. The VE responded that plaintiff could not perform his past relevant work, but could work as a bench assembler or a sedentary assembler. AR 598-99.

**STANDARDS**

A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). A person can be disabled for these purposes only if his or her impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

The initial burden of proof rests upon the claimant to establish his or her disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (DIB). The Commissioner bears the burden of developing the record. 20 C.F.R. §§ 404.1512(d), 416.912(d); *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991). The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for disability benefits. 20 C.F.R. §§ 404.1520, 416.920; *Quang Van*

*Han v. Bowen,* 882 F.2d 1453, 1456 (9th Cir. 1988) (SSI). If a determination that the claimant is, or is not, disabled can be made at any step, further review is unnecessary. 20 C.F.R. § 404.1520 Below is a summary of the five steps:

<u>Step One</u>. The Commissioner determines whether the claimant is engaged in substantial gainful activity. If so, the claimant is not disabled. If the claimant is not working in a substantially gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. § 416.920(a)-(b).

<u>Step Two</u>. The Commissioner determines whether the claimant has a severe mental or physical impairment. If not, the claimant is not disabled. If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step Three. 20 C.F.R. § 416.920(c).

<u>Step Three</u>. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the impairments listed in the Social Security Administration regulations. 20 C.F.R. pt.404, subpt.P, app. 1. If so, the claimant is disabled. If the claimant's impairment does not meet or equal one listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

<u>Step Four</u>. The Commissioner determines whether the claimant is able to perform work he or she has done in the past. This requires the ALJ to examine the claimant's residual functional capacity and the physical and mental demands of the claimant's past relevant work. *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002). A claimant must be able to perform his or her past relevant work either as actually performed, or as generally performed

in the national economy. 20 C.F.R. § 416.920(e). If the claimant is able to perform the work, the claimant is not disabled. If the claimant demonstrates, however, that he or she cannot do work performed in the past, the Commissioner's evaluation of claimant's case proceeds to Step Five. *Id.*

Step Five. The Commissioner determines whether the claimant is able to do any other work. If not, the claimant is disabled. If the Commissioner finds the claimant is able to do other work, the Commissioner must show a significant number of jobs in the national economy exist that the claimant can do. The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines. 20 C.F.R. pt.404, subpt.P, app.2. If the Commissioner demonstrates a significant number of jobs exist in the national economy that claimant can do, the claimant is not disabled. If the Commissioner does not meet this burden, the claimant is disabled. 20 C.F.R. § 416.920(f).

The burden of proof is on the claimant as to Steps One through Four. *Tackett*, 180 F.3d at 1098. At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett,* 180 F.3d at 1098, *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53 F.3d at 1039. The court must weigh all of the evidence,

whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40. The Commissioner, not the reviewing court, must resolve conflicts in the evidence and make credibility determinations, and the Commissioner's decision must be upheld even if the evidence would support either outcome. *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998). Even if the Commissioner's decision is supported by substantial evidence, however, it must be set aside if the proper legal standards were not applied in weighing the evidence and in making the decision. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

## **DISCUSSION**

Plaintiff argues that the ALJ erred in rejecting the opinions of Dr. Eckstein and Dr. McCullough, in discrediting plaintiff's and Elian's testimony, and in failing to prove that plaintiff retains the ability to perform other work.

### **The ALJ's Findings**

The ALJ found that plaintiff had a personality disorder with antisocial traits, a mood disorder associated with his general medical condition, post-traumatic stress disorder, back pain, and drug abuse in reported remission, with current evidence of narcotic drug-seeking behaviors. AR 23. She found that plaintiff's subjective pain complaints and functional limitations were not completely credible, and that he was prone to exaggeration for secondary gain of obtaining disability benefits and furthering his pain medication addiction. AR 24. She also found that his "longstanding history of criminal conduct and

13 - OPINION AND ORDER

felony convictions reflect[ed] most adversely on the reliability and truthfulness of his statements." AR 25. She accepted Elian's testimony only to the extent that it is consistent with the ALJ's other findings, noting that Elian worked outside of the home during the day and was, therefore, unable to witness plaintiff's daily activities and limitations. AR 24. She also stated that Elian has "substantial motivation" to corroborate plaintiff's statements, as well as "exaggerate his limitations in order to obtain additional income for their household." *Id.*

The ALJ agreed with Dr. Dragovich that plaintiff had "substituted his illicit drug addiction with an addiction to narcotic pain medications." *Id.* She noted that plaintiff's reports that he used drugs only from 1998 to 2000 were contradicted by his criminal records, which show that he had a felony drug conviction in January 2001. AR 25.

The ALJ discredited Dr. Eckstein's opinion, finding that it was not supported by the full record, and was entitled to "very little weight" because Dr. Eckstein misunderstood the intent of the Rating of Impairment Severity Reports, which are to assess the restriction levels produced by mental impairments, not circumstances, such as plaintiff's inability to obtain a driver's license. AR 26. The ALJ also discredited Dr. McCullough's opinion, finding that it merely "piggybacked" Dr. Eckstein's opinion, and that there was no evidence that Dr. McCullough had any psychological expertise, or was privy to plaintiff's mental health records to equip him to render a psychological opinion. *Id.* She concluded that both Dr. Eckstein and Dr. McCullough accepted plaintiff's "statements at face value without any consideration of inconsistency or credibility issues." *Id.*

In sum, the ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged disability onset date, that plaintiff had severe impairments that did not meet or equal the requirements of a listed impairment, and that he had the residual functioning capacity for light exertional work. The ALJ found that although plaintiff could not perform his past relevant work, he could perform work that existed in significant numbers in the national economy, including a light bench assembler, addresser, and sedentary assembler. AR 28-29.

**Dr. Eckstein's Opinion**

When there is conflicting medical testimony, the ALJ must determine credibility and resolve conflicts, affording greater weight to the opinion of a treating physician. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (citation omitted). If the ALJ chooses to discredit the treating physician's opinion, the ALJ must set forth specific and legitimate reasons supported by substantial evidence in the record for doing so. *Id.* (citation omitted).

Dr. Dragovich called into question Dr. Eckstein's opinion, stating that neither Dr. Eckstein nor Dr. McCullough were paying attention to the mood impact of plaintiff's narcotic medications, thereby affecting the diagnosis of dysthymia. AR 23. Dr. Dragovich also commented that plaintiff's post-traumatic stress disorder had never been clarified or adequately addressed, and that his anxiety disorder was in remission. She also noted that since plaintiff's street drug addiction had ceased, he had substituted his addiction with pain medication. *Id.*

Dr. Dragovich testified in support of the Disability Determination Services' assessment, which found inconsistencies in the record, that plaintiff exaggerated his symptoms, that Dr. Eckstein relied on plaintiff's self-reporting, and that there were inconsistencies between Dr. Eckstein's severity ratings and the record. AR 26. Dr. Dragovich opined that plaintiff was mildly restricted in daily activities, moderately restricted in social functioning, and mildly restricted in concentration, persistence, and pace. *Id.*

The ALJ adopted Dr. Dragovich's opinion, finding that they were consistent with the record as a whole. *Id.* The ALJ, not the court, is charged with determining credibility and resolving conflicts in evidence. *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003) (citation omitted). The ALJ properly discredited Dr. Eckstein's opinion by providing specific and legitimate reasons, supported by substantial evidence.

**Dr. McCullough's Opinion**

The ALJ rejected Dr. McCullough's opinion, finding that Dr. McCullough was merely "piggybacking" Dr. Eckstein's opinion and that there was no evidence that Dr. McCullough had the psychological expertise or was privy to plaintiff's mental health records to qualify him to render an opinion as to plaintiff's mental condition. After the ALJ's decision, Dr. McCullough wrote a letter to plaintiff's counsel, stating that he does have expertise in the psychiatric area, that he had reviewed plaintiff's mental health records, and that they did not change his medical opinion.

If this evidence were considered in isolation, the court may be inclined to remand this case for further proceedings. However, Dr. McCullough stated that he concurred

"substantially with [Dr. Eckstein's] opinions . . . ." AR 453. Review of Dr. McCullough's medical chart notes reveal that his findings largely support Dr. Eckstein's opinion, which, as discussed above, was contradicted by Dr. Dragovich and was properly rejected by the ALJ. Accordingly, further administrative review of Dr. McCullough's credentials and his opinion of plaintiff's mental condition would serve no useful purpose.

**Plaintiff's Testimony and the Lay Testimony**

When assessing a claimant's credibility, the ALJ may properly consider the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (citation omitted). Here, the record contains several misstatements by plaintiff, including statements to his doctors regarding when and for how long he stopped using narcotics. This was of concern to the ALJ, especially in light of plaintiff's persistent request for diverse pain medication from his physicians. This evidence, in addition to plaintiff's criminal history for crimes involving veracity, led the ALJ to find plaintiff not completely credible.

The ALJ may discredit testimony from a lay witness as long as the ALJ provides reasons that are germane to each witness. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citation omitted). The ALJ discredited Elian's testimony, finding that Elian worked out of the home for most of the day, so she was unable to witness how plaintiff spent his time. The ALJ also noted that Elian accepted plaintiff's complaints at face-value, and may have an ulterior motive to corroborate his complaints to benefit from additional household income. AR 24. These reasons are adequate to reject a lay witness's testimony.

17 - OPINION AND ORDER

**The VE's Testimony**

The essential role of a VE is to translate the ALJ's hypothetical questions into realistic job market probabilities. *Johnson v. Shalala*, 60 F.3d 1428, 1436 (9th Cir. 1995) (citation omitted). If the ALJ's hypothetical questions posed to the VE are appropriately based on relevant evidence, the VE's testimony is valuable, and the ALJ may properly rely on the VE's testimony to determine the availability of jobs that the claimant can perform. *Id.*

Here, the ALJ posed hypothetical questions to the VE based on her interpretation of the objective medical evidence. This is in accordance with the ALJ's discretion to accept or reject certain medical limitations and restrictions, even if there are contradicting medical opinions, as long as the ALJ's interpretation is supported by substantial evidence in the record. *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989) (citation omitted). Based on the ALJ's interpretation, coupled with the VE's testimony, the ALJ found that there were a significant number of jobs in the national economy that plaintiff could perform, including work as a bench assembler, addresser, and sedentary assembler. This was not error.

///
///
///
///
///

## **CONCLUSION**

Based on the foregoing, the court concludes that the findings of the Commissioner are free from legal error and are supported by substantial evidence in the record. The decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

DATED this __18___ day of May, 2005.

_____/s/Ancer L.Haggerty_____
ANCER L. HAGGERTY
United States District Judge